IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PEARLINA STORY, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 13-1429 |
| REPUBLIC BANK, a/k/a REPUBLIC FIRST BANK | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Pearlina Story ("Ms. Story"), a resident of Wilkinsburg, in the Western District of Pennsylvania, filed a Complaint against Defendant Republic First Bank ("Republic Bank"), a Pennsylvania chartered bank with its principal place of business in Philadelphia, wherein she claims that Republic Bank is liable to her based upon the following: (1) Republic Bank unlawfully initiated wire transfers; (2) Republic Bank unlawfully charged stop-payment and return fees; (3) Republic Bank failed to keep accurate account of Plaintiff's accounts; (4) Republic Bank unlawfully took Plaintiff's funds without authorization; and (5) Republic Bank discriminated against Plaintiff by denying Plaintiff a secured loan in the amount of $50,000.

In response, Defendant filed a "Motion to Transfer Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(3) and 28 U.S.C. § 1406(a)," arguing that this Court is an improper venue for the litigation and that it is in the interest of justice to transfer this case to the United States District Court for the Eastern District of Pennsylvania. Defendant also filed a brief in support of its Motion and attached the Affidavit of Tracie Young, the Chief Risk Officer of Republic Bank. Ms. Story then filed a brief in opposition to the motion, the Defendant filed a reply brief, and Plaintiff filed a sur-reply brief. For the reasons that

follow we will grant Defendant's "Motion to Transfer Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(3) and 28 U.S.C. § 1406(a)" and transfer this case to the United States District Court for the Eastern District of Pennsylvania.

**I. Plaintiff's Allegations.**

The following factual allegations are taken from the Plaintiff's Complaint: The Plaintiff, Pearlina Story, is a resident of Wilkinsburg, Pennsylvania. Complaint, ¶ 2. The defendant, Republic Bank, is located in Philadelphia, Pennsylvania. Id. at ¶ 3. Mary Gethers ("Ms. Gethers") is a CRS/Teller at Republic Bank and was responsible for the initial opening of Plaintiff's banking accounts with Defendant Republic Bank. Id. at ¶ 4. Robert Opferman ("Mr. Opferman") is Vice President of Republic Bank and is responsible for the operation of client accounts at said bank. Id. at ¶ 5.

Ms. Story, escorted by her Attorney Robert Thomas, went to Republic on May 7, 2010, to cash a check written by Duffy & Partners Law Firm in the amount of $405,766.89. Id. at ¶ 6. Ms. Gethers took the check and told Ms. Story that she could not cash the check even though the check was from Republic Bank and that the check had to be deposited. Ms. Story then deposited the check. Id. at ¶ 8.

The accounts were divided into savings, checking, money market and a CD. The accounts were as follows: $100,766.89 Savings #4258789, $200,000 Money Market Checking #1183753, $100.00 Checking #1183761, and $50,000 CD. Id. at ¶ 9. The checking account, which opened on May 7, 2010, did not show an initial deposit until May 10, 2010 via telephone transfer. The accounts totaled $350,866.89. Id. at ¶ 9.

Ms. Story received three cashier's checks after the initial deposit. Two checks were for $10,000.00 each and one check was for $15,000.00. She also received

2

$20,000.00 cash. It was not until March 20, 2013 that Ms. Story noticed $4,900.00 was missing from her initial deposit with Ms. Gethers. Id. at ¶ 10.

Plaintiff also applied for a secure loan for $50,000.00, which was denied. Id. at ¶ 11.

Plaintiff tried to use the bank's online banking service and the computer went out and not knowing if any checks were accepted, Plaintiff decided to stop payments and she was charged for stop payment. For example, a stop payment was put on Stewardship Fund LP for $20,000 but Republic Bank paid Stewardship and charged Plaintiff for the stop payment. Id. at ¶ 12.

Plaintiff could not cash checks, when deposited into her account with A-K Valley Federal Credit Union, most of the checks were rejected and Plaintiff had to pay for return fees. Plaintiff had to go to Philadelphia to withdraw funds. Id. at ¶ 13.

Ms. Story noticed that a lot of wire transfers existed without her permission and complained to Republic Bank. Plaintiff was told to get in touch with the party taking money from the account. An example of this occurring was on July 20, 2010 $2000 was wired transferred to Republic Bank and on July 16, 2010, $1000.00 was wired from AK Valley FCU, but there is no statement of deposit. Id. at ¶ 14.

Ms. Story asked Republic Bank to close the accounts and was told she would have to come to Philadelphia to close her accounts. After continuing to complain, and complaining about money being missing from an account, and after Plaintiff spoke to Dan Doughty Jr., on September 29, 2010, who told Plaintiff to send a notarized statement, on October 1, 2010 the accounts were closed without a notarized statement.

Id. at ¶ 15. Republic Bank then sent Ms. Story two checks, one for $5.09 and one for $0.24. Ms. Story cashed only one check. Id. at ¶ 16.

Ms. Story was told by the FDIC in July 2011, to meet with Mr. Opferman after the investigation to go over the bank accounts. She met with him and his assistants in Philadelphia and she understood she would be provided with an excel sheet and then they would meet again to go over the wire transfers and missing money. She reviewed the excel sheet and called Mr. Opferman. She was told to talk to his attorney. Id. at ¶ 17.

**II. Legal Analysis.**

    **A. Proper or Improper Venue.**

As stated, the legal basis for Republic Bank's motion to transfer this action to the Eastern District of Pennsylvania is that this Court is an improper venue pursuant to 28 U.S.C. § 1406(a) and therefore, it is in the interest of justice to transfer it to the United States District Court for the Eastern District of Pennsylvania. Section 1406(a) states: [t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Id.

Whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568, 573 (2013). Subsection 1391(a) explains, in relevant part, that "except as otherwise provided by law ... this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). The issue of

venue in general is addressed in 28 U.S. C. § 1391(b) which provides:

> (b) Venue in general.--A civil action may be brought in--
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Id.

### 1. 28 U.S. C. § 1391(b)(1).

We examine first whether venue is proper pursuant to 28 U.S. C. § 1391(b)(1) which provides that "[a] civil action may be brought in-- (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." The issue of determining the residency of Republic Bank, a Pennsylvania corporation, is addressed in 28 U.S.C. § 1391(d) which states:

> (d) Residency of Corporations in States With Multiple Districts.— For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Id. Thus, it is necessary to determine whether Republic Bank's contacts with this district would be sufficient to subject it to personal jurisdiction were this district a separate State.

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state, here Pennsylvania. Fed. R.

Civ. P. 4(e); Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir.1998) (citation omitted). "Pennsylvania's long-arm statute, 42 Pa. Cons.Stat. Ann. § 5322(b), authorizes Pennsylvania courts 'to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment'." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Grand Entertainment Group, Ltd. v. Star Media Sales, 988 F.2d 476, 481 (3d Cir. 1993) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).

Courts must resolve the question of personal jurisdiction "based on the circumstances that the particular case presents." Brooks v. Bacardi Rum Corp., 943 F. Supp. 559, 562 (E.D. Pa. 1996) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485 (1985). Due process, then, is an individualized inquiry. Mellon Bank, 960 F.2d at 1224-25. Consistent with the requirements of due process, we must ensure that a defendant is subjected to personal jurisdiction only where its activities have been purposefully directed at residents of the forum, or otherwise availed herself of the privilege of conducting activities there. Burger King, 471 U.S. at 472; Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The due process inquiry turns on the defendant's contacts with the forum state. Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differ according to which sort of jurisdiction applies. General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated

to the cause of action being litigated. Due process for general personal jurisdiction requires a showing that the defendant has had continuous and systematic contacts with the forum state. Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 412-13, 414 nn. 8 & 9 (1984).

Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Mellon Bank, 960 F.2d at 1221. Specific personal jurisdiction comports with due process as long as the defendant has sufficient minimum contacts with the forum state. The due process inquiry must focus on "the relationship among the defendant, the forum, and the litigation." Rush v. Savchuk, 444 U.S. 320, 327 (1980) (*quoting* Shaffer v. Heitner, 433 U.S. 186 (1977)). It has long been recognized that minimum contacts exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. at 253. Put another way, when a defendant's conduct is such that she reasonably should have foreseen being haled into court in the forum, the necessary minimum contacts have been shown. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. Burger King, 471 U.S. at 476.

It is the plaintiff's burden to demonstrate that the defendant has minimum contacts with the forum. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984) (*quoting* Compagnie des Bauxites de Guinee v. L'Union, 723 F.2d 357 (3d Cir. 1983)). To meet this burden, plaintiffs "must come forward with sufficient jurisdictional facts by affidavit, depositions, or other competent evidence to establish the

court's jurisdiction over the defendant." National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc., 785 F.Supp. 1186, 1189 (W.D. Pa. 1992). "[F]actual discrepancies created by affidavits are generally resolved in favor of the non-moving party." Elbeco Inc. v. Estrella de Plato, Corp., 989 F.Supp. 669, 674 n. 3 (E.D. Pa. 1997).

If a defendant has sufficient minimum contacts with the forum state, the court may further consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe v. Washington, 326 U.S. 310, 320 (1945)). Although this determination is discretionary, courts in this circuit "have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction." Pennzoil Prods. Co. v. Copelli & Assoc., 149 F.3d 197, 201 (3d Cir. 1998). Factors to be considered include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King, 471 U.S. at 477 (quoting World-Wide Volkswagen, 444 U.S. at 292).

At this point it becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Grand Entertainment, 988 F.2d at 483 (quoting Burger King, 471 U.S. at 477).

Finally, in determining whether or not venue is proper in a given court, "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." Bockman v. First American Marketing Corp., 459 Fed.Appx. 157, 158 (3d. Cir. 2012);

In her Opposition to Defendant's Motion, Plaintiff argues that venue is proper in this district because Republic Bank is a Pennsylvania corporation and therefore, it resides in all three federal districts, including this district. Plaintiff's Opposition to Motion, p. 3. She further contends that venue is proper in this district:

> "because the contract that is at issue in this case was formed in this district and had its effect in this district,' and because her damages 'were suffered in this district." Specifically, plaintiff claims that her attorney negotiated with defendants "Via face to face, asked Defendant to cash check for Plaintiff via firms account at Republic Bank located in Philadelphia." Defendant denied to cash check and Plaintiff deposited funds at Republic Bank, Defendant agreed and made Plaintiff do transactions from Pittsburgh, PA knowing Plaintiff was not a resident of Philadelphia, when Plaintiff complained and asked for account closure Republic Bank denied request and stated in order for account to be closed Plaintiff must come to Philadelphia, Republic Bank then decided (without consulting with Plaintiff) to close Plaintiffs account, therefore the contract was breached and was based on Plaintiff's residence in Pittsburgh, based on Plaintiff[']s inability to return to Philadelphia the Defendant decided that there was no diversity at t[h]at time and sent Plaintiff two checks closing the account. Plaintiff did not know and was unaware Republic Bank closed account until Plaintiff received checks. Whereas, Defendant falsified testimony stating Plaintiff closed account in Motion for Change of Venue.

Id. at p. 4. Plaintiff also notes that Republic Bank holds a line of credit with the Federal Home Loan Bank of Pittsburgh and five other accounts in Pittsburgh worth $60,000; that telephone, wire transfers and negotiations between Defendant and Plaintiff occurred in this district; that any relevant documents and records located in the Eastern District can easily be transferred to Pittsburgh; that Defendant has not alleged that its witnesses would be unavailable or unwilling to testify in this District, only that it would be inconvenient; and that for Plaintiff, trial in the Eastern District would impose significant financial hardships on her and "would be extremely inconvenient and burdensome." Id. at pp. 3, 5-7. Thereafter, in supplemental briefing, Plaintiff also contends that venue is proper in this Court because: (1) she is indigent, disabled and without resources to travel from

9

Pittsburgh to Philadelphia; (2) Plaintiff complained to Republic Bank via email and telephone conversations while she was located in Pittsburgh, which is located in the Western District of Pennsylvania: (3) some of the transactions she conducted or attempted to conduct with Republic Bank that underlie her claims against it were done by her via email, wire transfer, and telephone conversations while she was living in Pittsburgh; and (4) there will be no prejudice to having the case remain in the Western District of Pennsylvania. Plaintiff's Reply Brief, p. 1.

As stated above, there is specific personal jurisdiction over a nonresident defendant where the cause of action arose from the defendant's forum-related activities. Mellon Bank (East) v. DiVeronica Bros., 983 F.2d 551 (3d Cir. 1993). Here, assuming Plaintiff's allegations of misconduct by Defendant are true, as we must for purposes of this motion, said misconduct, Republic Bank unlawfully initiating wire transfers, Republic Bank unlawfully charging stop-payment and return fees, Republic Bank failing to keep accurate account of Plaintiff's accounts, Republic Bank unlawfully taking Plaintiff's funds without authorization, and Republic Bank discriminating against Plaintiff by denying her a secured loan in the amount of $50,000, all occurred in the Eastern District of Pennsylvania. Therefore, we find that the United States District Court for the Eastern District of Pennsylvania has specific personal jurisdiction over Republic Bank relative to this litigation and this court does not have specific personal jurisdiction over Republic Bank relative to this litigation.

Similarly the Eastern District of Pennsylvania court has general personal jurisdiction over Republic Bank and we do not have general personal jurisdiction over Republic Bank. As stated above, general personal jurisdiction arises from a defendant's

contacts with the forum that are unrelated to the cause of action being litigated. Due process for general personal jurisdiction requires a showing that the defendant has had continuous and systematic contacts with the forum state. Helicopteros Nacionales de Colombia, N.A. v. Hall, 466 U.S. 408, 412-13, 414 nn. 8 & 9 (1984). Republic Bank's contacts with this district comprise of six deposit accounts which have a total of $60,000 in assets: (1) three (3) are accounts which originated in the Eastern District of Pennsylvania where the customer subsequently moved to this district; (2) one (1) is an account which is a Court-Ordered Minor Account established by a law firm in the Eastern District of Pennsylvania; (3) one (1) is a custodial account, whereby the custodian is located in the Eastern District of Pennsylvania; and (4) the remaining account is a vendor account, whereby the vendor is located in the Western District of Pennsylvania. Otherwise, Defendant: (1) maintains a principal place of business in Philadelphia, Pennsylvania, located in the Eastern District of Pennsylvania; (2) conducts its business, banking, in the Eastern District of Pennsylvania and the District of New Jersey; (3) its corporate officers and directors, and employees are located in the Eastern District of Pennsylvania and the District of New Jersey; and (4) its books and records and the custodian of records are located in the Eastern District of Pennsylvania. We find that these limited contacts do not rise to the level of being continuous and systematic contacts with the Western District of Pennsylvania sufficient to give us general personal jurisdiction over Republic Bank.

Having concluded that we lack both general and specific personal jurisdiction over Republic Bank and that the United States District Court for the Eastern District of Pennsylvania maintains both general and specific personal jurisdiction over Republic

Bank, pursuant to §1391(d), for purposes of determining venue, we further find that Republic Bank shall be deemed to reside in the Eastern District of Pennsylvania and not in the Western District of Pennsylvania. As such, this court is not the proper venue pursuant to § 1391(b)(1) which states that: "[a] civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Id.

### 2. 28 U.S. C. § 1391(b)(2).

Our next query is whether this district is a proper venue pursuant to § 1391(b)(2), which provides: "[a] civil action may be brought in--(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Id. According to the Complaint and all reasonable inferences therefrom, on May 7, 2010, Plaintiff, a resident of Wilkinsburg, which is within the Western District of Pennsylvania, went with her attorney to Defendant Republic Bank, which is located in Philadelphia, Pennsylvania, within the confines of the Eastern District of Pennsylvania, to cash a check for $405,766.89 written on a Republic Bank account. When Mary Gethers, an employee of Republic Bank would not cash the check, even though it was a Republic Bank check, Plaintiff opened three bank accounts and a certificate of deposit ("CD") with Republic Bank and deposited the check to fund those accounts and CD. Republic Bank, from Philadelphia, thereafter issued Plaintiff three (3) cashier's checks drawn on one or more of these bank accounts. At some point thereafter, while in Pittsburgh, Plaintiff realized some of the money was missing from her Republic Bank accounts and she attempted to get the money back from Republic Bank by telephoning and email them from Pittsburgh.

Additionally, at some point in time, but prior to the bank accounts being closed by Republic Bank on October 1, 2010, Plaintiff applied for, and was denied for discriminatory reasons, a loan by Republic Bank. Moreover at some point, while in Pittsburgh, Plaintiff tried to use the bank's online service, but was unsuccessful and so initiated a number of stop payments. Nevertheless, Republic Bank disregarded most of her stop payments, paid most of the payments, and still charged Plaintiff for the stop payment. Plaintiff tried to deposit and cash checks written on the Republic Bank account in Pittsburgh, but most were rejected and she had to pay return fees. Ultimately, Plaintiff had to travel to Philadelphia in order to withdraw funds from her Republic Bank accounts. Plaintiff also saw that Defendant was completing wire transfers without her permission; when she complained to Republic Bank, they told her to contact the party who was taking the money from their accounts. When Plaintiff, from Pittsburgh, asked Republic Bank to close the accounts and complained that money was missing from the accounts, they told her she would have to close them in Philadelphia. Ultimately, Plaintiff did not have to travel to Philadelphia to close the accounts; Republic Bank closed the bank accounts and mailed her two (2) checks on October 1, 2010. Plaintiff also was told by the FDIC in July 2011, presumably while in Pittsburgh, to talk to Republic Bank employee Robert Opferman and his assistants about the bank accounts, but when she called to speak to him, she was told to talk to his attorney.

Even assuming these allegations are true, we find the activity relevant to the litigation that occurred in Pittsburgh does not rise to the level of being "a substantial part of the events or omissions giving rise to the claim." It is not the conduct of Ms. Story which gives rise to the claims in this litigation; it is Defendant's conduct and its actions

13

all occurred in the Eastern District of Pennsylvania. See Walker v. Bankliberty, 2011 WL 649950, *2 (S.D. Ind.) (where Indiana bank customer sued Missouri bank for alleged violations of the federal Electronic Fund Transfer Act and bank moved to dismiss or transfer for improper venue, court granted bank's motion reasoning that "[Plaintiff's] analysis of the events giving rise to this litigation, however, overlooks several crucial steps in the causal chain. In fact, the events at issue are the Bank's determination of whether to investigate [Plaintiff's] claim, the Bank's document preparation, and the Bank's employees' conduct more generally, all of which gave rise to the litigation, and all of which took place within the Missouri offices. The receipt of the letter and statements [by Plaintiff in Indiana] is simply the last link in the causal chain; it pales in comparison to the vast majority of material events, which occurred in Missouri."). Accordingly, we find that venue is not proper in this district pursuant to § 1391(b)(2).

### 3. 28 U.S. C. § 1391(b)(3).

Finally, we find that this district is not a proper venue pursuant to § 1391(b)(3) which states: (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," because this action may be brought in the United States District Court for the Eastern District of Pennsylvania.

### B. Transfer or Dismiss Complaint.

Having concluded that the Western District of Pennsylvania is an improper venue for this litigation, we return full circle to 28 U.S.C. § 1406(a) which states: [t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or

division in which it could have been brought." Id. There are numerous relevant factors a court should consider when ruling on a section 1406(a) motion; the court should look to such factors as: (1) the plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the possibility of viewing premises, if applicable; (5) the cost of obtaining attendance of willing witnesses; (6) all other practical problems that make trial of a case easy, expeditious, and inexpensive; and (7) "public interest" factors, including the relative congestion of court dockets, choice of law considerations, and the relationship of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995); Quezada v. Darden Restaurants, Inc., 139 F.Supp.2d 666, 667 (W.D. Pa. 2001).

We have already determined that venue is proper in the Eastern District of Pennsylvania because Defendant resides there and a substantial part of the events giving rise to Plaintiff's claims occurred there. Taking these facts into account and also that all potential witnesses but for Plaintiff are located in the Eastern District of Pennsylvania as are Defendant's records relevant to this litigation, and Defendant's request that we transfer the case to the Eastern District of Pennsylvania court, as opposed to dismissing it, we find that it is in the interest of justice to transfer this case to said court and will so order.

**III. Conclusion.**

Defendant's "Motion to Transfer Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(3) and 28 U.S.C. § 1406(a)" to the United States District Court for the Eastern District of Pennsylvania shall be granted. An appropriate Order follows:

## ORDER

AND NOW, this 1st day of April, 2014, it is hereby ORDERED, ADJUDGED, AND DECREED that Defendant's "Motion to Transfer Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(3) and 28 U.S.C. § 1406(a)" [ECF #7] to the United States District Court for the Eastern District of Pennsylvania is GRANTED.

The Clerk of the Court will assist in the transfer of this case to the United States District Court for the Eastern District of Pennsylvania and will mark this case CLOSED.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Court Judge

cc: Pearlina S. Story, *pro se*
1447 Foliage Street
Wilkinsburg, PA 15221